IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-30950
Summary Calendar
_____


CLINTON J HEILEMAN, JR

                                    Plaintiff-Appellant

v.

MICROSOFT CORPORATION; ET AL

                                    Defendants

MICROSOFT CORPORATION; JOHN STEER

                                    Defendants-Appellees


_____

Appeal from the United States District Court
for the Eastern District of Louisiana
Docket No. 98-CV-3202-T
_____

March 9, 2000

Before KING, Chief Judge, and POLITZ and DENNIS, Circuit Judges.

PER CURIAM:[*]

     Plaintiff-Appellant Clinton J. Heileman, Jr. ("Heileman")

appeals from the district court's entry of summary judgment in

favor of Defendants-Appellees Microsoft Corporation ("Microsoft")

and John Steer ("Steer" or, with Microsoft, the "Appellees").

I. BACKGROUND

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Heileman is a busboy at the Hilton Hotel in New Orleans, Louisiana. In late July 1998, Steer was staying at the Hilton and attending a conference held by his employer, Microsoft. Steer is diabetic and must closely monitor his blood-glucose level. Several times a day, Steer pricks his finger with a disposable lancet to draw a small amount of blood for testing. On the morning of July 28, 1998, after a meal at the hotel coffee shop, Steer pricked his finger for a blood test. Rather than properly disposing of the used lancet, Steer left it on the table wrapped in a napkin. Heileman subsequently pricked his right index finger on the used lancet when clearing Steer's table.

Heileman immediately reported the incident to his supervisors, who sent him to Tulane Medical Center ("Tulane") for an examination. Tulane took a sample of Heileman's blood and tested it for the human immunodeficiency virus ("HIV"), hepatitis B and C, and syphilis. The test results were negative. Tulane put Heileman on a one-year testing schedule and tested him for blood borne diseases at regular intervals. Each test indicated that Heileman was negative for HIV, hepatitis B and C, and syphilis.

While Heileman was at Tulane, medical personnel contacted the Hilton to determine if a hotel guest had used the lancet. After determining that the lancet belonged to Steer, Tulane asked him to come to the hospital for a blood test to determine whether he carried any disease that could have been transmitted to Heileman via the lancet. Steer demurred and told Tulane that he

2

was HIV- and hepatitis-free. Nonetheless, Steer told Tulane that when he returned home to Washington he would submit to a blood test by his personal doctor and forward the results.

Steer did not have a blood test immediately upon returning to Washington, but he did have a test on October 21, 1998. The test showed that Steer was negative for HIV, and hepatitis B and C. The results of this test were forwarded to Heileman. Steer was tested again, on March 19, 1999, and on July 8, 1999. The results of both tests were negative and, again, the results were provided to Heileman.

On September 17, 1998, Heileman filed suit against Steer and Microsoft in Louisiana state court.[1] Heileman's suit alleged that Steer was negligent in leaving the lancet on the table where Heileman could prick his finger. As a result of this negligent behavior, Heileman allegedly suffered severe emotional distress because he feared he might have contracted a blood-borne disease. Heileman also claimed that Steer negligently caused Heileman to suffer further emotional distress by failing to submit to a blood test at Tulane. Because Microsoft employed Steer, and because Steer was in New Orleans as part of his employment, Heileman alleged that Microsoft was equally liable for Steer's negligence.

The Appellees removed the case to federal court on diversity grounds and moved for summary judgment. At a hearing on the

---

[1] Heileman's original complaint named Microsoft and "John Doe" as defendants. Heileman subsequently substituted Steer in place of "John Doe."

summary judgment motion, Heileman emphasized the fact that Steer refused to submit to a blood test at Tulane and had waited nearly two months before submitting to a blood test in Washington. Heileman argued that this behavior amounted to an intentional infliction of emotional distress. Appellees responded by noting that Heileman never alleged a claim of intentional infliction of emotional distress in his complaint. Additionally, the Appellees argued that because the blood tests indicated that Heileman was never exposed to disease as a result of the lancet prick, he cannot recover on his negligent infliction of emotional distress claim.

The district court granted summary judgment to the Appellees on Heileman's negligent infliction of emotional distress claim because it found that Heileman could not show that the lancet prick resulted in exposure to disease. The court observed that Steer's two month delay in taking a blood test raised an "interesting issue" as to whether he "intentionally" avoided taking a blood test. However, the court noted that Steer <u>did</u> eventually have a blood test and that the delay was not so "extreme and outrageous" as to give rise to a claim of intentional infliction of emotional distress. The court then directed the parties to submit briefs discussing whether Heileman had a right to recover for any physical damage caused by the lancet prick. After briefing, the district court entered summary judgment in favor of Appellees.

The day after the summary judgment hearing, Heileman moved

4

for leave to amend his complaint.  Heileman sought to add an intentional infliction of emotional distress claim based on Steer's failure to promptly submit to a blood test.  The court granted Heileman's motion for leave to amend, but later admitted that it did so inadvertently.  The court subsequently granted Appellees' motion to strike the amended complaint.

On appeal, Heileman argues that he pled a valid "infliction of emotional distress" claim and that the district court erred in granting the Appellees' motion for summary judgment.[2]  Heileman's brief fails to delineate whether Steer's alleged infliction of emotional distress was negligent or intentional; it only alleges that the Appellees acted "irrationally and cruelly."

To the extent that Heileman contends the infliction of emotional distress was negligent, we agree with the district court that there is no genuine issue of fact for trial.  To the extent that Heileman's claim is based on an intentional infliction of emotional distress, we find that Heileman failed to properly raise this claim below and we decline to consider it on appeal.

## II. DISCUSSION

---

[2]  In his brief, Heileman's "Statement of the Issue" section claims that he is appealing the district court's decision to grant Appellees summary judgment on his physical injury claim. However, Steer does not address the "physical injury" issue in the body of his brief, nor does he provide any legal support for this claim.  As such, he has waived appellate consideration of this issue.  See Applewhite v. Reichhold Chemicals, Inc., 67 F.3d 571, 573 & n.7 (5th Cir. 1995).

A. Negligent Infliction of Emotional Distress

We review the district court's grant of summary judgment de novo, applying the same standards as the court below. See Matagorda County v. Law, 19 F.3d 215, 217 (5th Cir. 1994). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

To recover damages for negligent infliction of emotional distress based on a fear of contracting an infectious disease, Louisiana law requires that the plaintiff present evidence showing that there was a "channel of exposure," such as a needle prick, and that the plaintiff was actually exposed to a disease. In Nesom v. Tri Hawk Int'l, 985 F.2d 208, 210 (5th Cir. 1993), we noted that Louisiana law does not allow a party to maintain an action based on fear of contracting a disease "absent a showing that the party was actually exposed" to disease. We noted that "[t]o allow someone to recover merely because he fears that he may have been exposed to a [disease] goes too far." Id. at 211. In Vallery v. Southern Baptist Hosp., 630 So.2d 861, 867 (La. Ct. App. 1993), the Louisiana Fourth Circuit Court of Appeals postulated that a plaintiff may not recover when he can show that a "channel of exposure" existed but cannot show that the channel of exposure resulted in actual exposure to disease. Although a plaintiff's fear in such a situation may be genuine, the court reasoned that such fear "is based on speculation rather than

6

fact." Id.

Similarly, in Stewart v. St. Frances Cabrini Hosp., 698 So.2d 1, 5 (La. Ct. App. 1997), the Louisiana Third Circuit Court of Appeals found that the plaintiff, the wife of a hospital worker who had been pricked with a needle, could not state a compensable claim based on her fear of becoming infected with HIV without alleging a channel of infection and the "presence of an infectious disease." Id. The court noted that Stewart's fear of contracting a disease was "real and genuine," but because she failed to allege a channel of exposure and actual exposure to HIV, her claim was not cognizable. Id.

Heileman looks to Vallier v. Louisiana Health Systems, Inc., 722 So.2d 418 (La. Ct. App. 1998), to support his emotional distress claim. In Vallier, the Louisiana Third Circuit Court of Appeals held that a cause of action existed based upon the mental anguish the plaintiff suffered when she discovered that she had been operated on with improperly disinfected instruments. Even though Vallier could not show that she was actually exposed to an infectious disease, the court allowed her to pursue an emotional distress claim. The court allowed Vallier to proceed because it found that the hospital owed her a heightened duty of care, and because no tests were ever performed on the instruments to determine whether they carried an infectious disease. See id. at 421. Such is not the case here. Steer owed no special duty to Heileman and, in any event, blood tests conclusively show that Heileman was not exposed to disease as a result of the lancet

7

prick.

Heileman has clearly alleged a channel of exposure-- the lancet prick. And we do not doubt that his fear of infection was genuine. However, he can present no evidence that he was actually exposed to any disease. Under Louisiana law, fear of exposure, absent proof that one was actually exposed to disease, can not support a claim of negligent infliction of emotional distress. Therefore, the district court did not err in granting Appellees' motion for summary judgment.


B. Intentional Infliction of Emotional Distress

Much of Heileman's argument, both in his brief and at the summary judgment hearing, focused on Steer's refusal to submit to a blood test at Tulane and his two month delay in taking a blood test when he returned to Washington. Heileman alleges that Steer's delay amounts to an intentional infliction of emotional distress. However, Heileman's original complaint never alleged any intentional action on Steer's part. This argument was first raised at the summary judgment hearing and then repeated in Heileman's amended complaint.

We will not consider on appeal a claim that was never properly before the district court. See Portis v. First Nat'l Bank of New Albany, 34 F.3d 325, 331 (5th Cir. 1994). An issue is properly before the district court if it is raised in the pleadings, the pretrial order, or tried by consent. See id. Because Heileman never raised an intentional infliction of

8

emotional distress claim in his original complaint, and because the district court struck his amended complaint, the issue was never properly before the district court and we refuse to consider it on appeal.

Furthermore, by failing to argue that the district court erred in striking his amended complaint, Heileman has waived any consideration of the issue on appeal. See Childs v. State Farm Mut. Auto. Ins. Co., 29 F.3d 1018, 1029 (5th Cir. 1994). Even if Heileman had properly challenged the district court's order striking his amended complaint, we do not believe that the court's action was not an abuse of discretion. While Federal Rule of Civil Procedure 15 provides that leave to amend "shall be freely given when justice so requires," the decision to grant leave is a matter firmly within the discretion of the trial court. See In the Matter of Southmark Corp., 88 F.3d 311, 314 (5th Cir. 1996). In striking the amended complaint, the district court noted that the motion for leave to amend was filed nearly eighteen months after the deadline for all amendments to the pleadings, and that there was no evidence indicating that Heileman was unable to amend his complaint prior to the deadline. Given the untimely nature of the amendment, we can not say that the district court abused its discretion in striking Heileman's amended complaint. See Wimm v. Jack Eckerd Corp., 3 F.3d 137, 139 (5th Cir. 1993) (stating that a district court may consider factors such as "undue delay" by the plaintiff when deciding whether to grant leave to amend).

9

### III. CONCLUSION

For the above stated reasons, we find that the district court did not err in granting summary judgment to the Appellees. AFFIRMED.